1 | EILEEN M. DECKER
United States Attorney
2 | PATRICIA A. DONAHUE
Assistant United States Attorney
3 | Chief, National Security Division
ANTHONY J. LEWIS (Cal. Bar No. 231825)
4 | Assistant United States Attorney
Deputy Chief, Terrorism and Export Crimes Section
5 |     1500 United States Courthouse
      312 North Spring Street
6 |     Los Angeles, California 90012
      Telephone: (213) 894-1786
7 |     Facsimile: (213) 894-7631
      E-mail: anthony.lewis@usdoj.gov
8 |
Attorneys for Plaintiff
9 | UNITED STATES OF AMERICA

10 |                 UNITED STATES DISTRICT COURT

11 |            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12 | UNITED STATES OF AMERICA,          No. SA CR 14-131

13 |            Plaintiff,             PLEA AGREEMENT FOR DEFENDANT
                                       SU BIN
14 |            v.

15 | SU BIN,
       aka "Stephen Su,"
16 |   aka "Stephen Subin,"
       aka "Steven Subin,"
17 |
            Defendant.
18 |

19 |

20 |      1.    This constitutes the plea agreement between Su Bin

21 | ("defendant") and the United States Attorney's Office for the Central

22 | District of California (the "USAO") in the above-captioned case.

23 | This agreement is limited to the USAO and cannot bind any other

24 | federal, state, local, or foreign prosecuting, enforcement,

25 | administrative, or regulatory authorities.

26 |                     DEFENDANT'S OBLIGATIONS

27 |      2.    Defendant agrees to:

28 |

1          a.   Give up the right to indictment by a grand jury and,
2     at the earliest opportunity requested by the USAO and provided by the
3     Court, appear and plead guilty to a single-count information in the
4     form attached to this agreement as Exhibit A or a substantially
5     similar form, which charges defendant with a conspiracy in violation
6     of Title 18, United States Code, Section 371.

7          b.   Not contest facts agreed to in this agreement.

8          c.   Abide by all agreements regarding sentencing contained
9     in this agreement.

10         d.   Appear for all court appearances, surrender as ordered
11    for service of sentence, obey all conditions of any bond, and obey
12    any other ongoing court order in this matter.

13         e.   Not commit any crime; however, offenses that would be
14    excluded for sentencing purposes under United States Sentencing
15    Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
16    within the scope of this agreement.

17         f.   Be truthful at all times with Pretrial Services, the
18    United States Probation Office, and the Court.

19         g.   Make restitution in accordance with any order of
20    restitution, and not seek the discharge of any restitution
21    obligation, in whole or in part, in any present or future bankruptcy
22    proceeding.

23         h.   Pay the applicable special assessment at or before the
24    time of sentencing unless defendant lacks the ability to pay and
25    prior to sentencing submits a completed financial statement on a form
26    to be provided by the USAO.

27                          THE USAO'S OBLIGATIONS

28         3.   The USAO agrees to:

1           a.   Not contest facts agreed to in this agreement.

2           b.   Abide by all agreements regarding sentencing contained

3 in this agreement.

4           c.   Except for criminal tax violations (including

5 conspiracy to commit such violations chargeable under 18 U.S.C.

6 § 371), not further criminally prosecute defendant for violations

7 arising out of defendant's conduct described in the agreed-to factual

8 basis set forth in paragraph 12 below.

9           d.   At the time of sentencing, move to dismiss the

10 underlying indictment as against defendant.  Defendant agrees,

11 however, that at the time of sentencing the Court may consider the

12 conduct underlying any dismissed charges in determining the

13 applicable Sentencing Guidelines range, the propriety and extent of

14 any departure from that range, and the sentence to be imposed.

15           e.   At the time of sentencing, provided that defendant

16 demonstrates an acceptance of responsibility for the offense up to

17 and including the time of sentencing, recommend a two-level reduction

18 in the applicable Sentencing Guidelines offense level, pursuant to

19 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

20 additional one-level reduction if available under that section.

21           f.   Recommend that defendant be sentenced to a term of

22 imprisonment no higher than the low end of the applicable Sentencing

23 Guidelines range, provided that the offense level used by the Court

24 to determine that range is 25 or higher and provided that the Court

25 does not depart downward in offense level or criminal history

26 category.  For purposes of this agreement, the low end of the

27 Sentencing Guidelines range is that defined by the Sentencing Table

28 in U.S.S.G. Chapter 5, Part A.

1        g.    Recommend to the Court that the Court, in imposing

2 defendant's sentence, recommend to the Bureau of Prisons that, when

3 it calculates how defendant's sentence is served, defendant be given

4 credit for the time spent in official detention in Canada awaiting

5 extradition to the United States, pursuant to Title 18, United States

6 Code, Section 3585(b)(1).

7 <u>NATURE OF THE OFFENSE</u>

8     4.   Defendant understands that for defendant to be guilty of

9 the crime charged in count one, that is, conspiracy, in violation of

10 Title 18, United States Code, Section 371, the following must be

11 true:

12        a.    There was an agreement between two or more persons to

13 commit one or more federal offenses (in this case, two federal

14 offenses:  first, to violate the Computer Fraud and Abuse Act, Title

15 18, United States Code, Section 1030(a)(2)(C) and (c)(2)(B)(i); and

16 second, to violate the Arms Export Control Act ("AECA"), Title 22,

17 United States Code, Section 2778(c), and the International Traffic in

18 Arms Regulations ("ITAR"), Title 22, Code of Federal Regulations,

19 Parts 120-130);

20        b.   Defendant became a member of the conspiracy knowing of

21 at least one of its objects and intending to help accomplish it; and

22        c.   One of the members of the conspiracy performed at

23 least one overt act for the purpose of carrying out the conspiracy.

24    5.   The first crime that was an object of the conspiracy (a

25 violation of the Computer Fraud and Abuse Act, Title 18, United

26 States Code, Section 1030(a)(2)(C) and (c)(2)(B)(i)), has the

27 following elements:

28

1        a.   The defendant or a co-conspirator intentionally
2   accessed without authorization a computer; and
3        b.   By accessing without authorization a computer, the
4   defendant or a co-conspirator obtained information from a computer
5   that was used in or affected commerce or communication between one
6   state and other states, or between a state of the United States and a
7   foreign country.
8     6.   The second crime that was an object of the conspiracy (a
9   violation of the AECA, Title 22, United States Code, Section 2778(c),
10  and the ITAR, Title 22, Code of Federal Regulations, Parts 120-130),
11  has the following elements:
12       a.   Defendant or a co-conspirator exported information out
13  of the United States by any means;
14       b.   The information was technical data, i.e., a defense
15  article or related to a defense article listed on the United States
16  Munitions List ("USML") set forth in the ITAR;
17       c.   Neither defendant nor any co-conspirator obtained a
18  license from the Department of State, Directorate of Defense Trade
19  Controls; and
20       d.   Defendant knew that exporting or disclosing the
21  technical data without a license was illegal.
22    7.   Defendant understands that for defendant to be subject to
23  the statutory maximum sentence set forth below, the government must
24  prove beyond a reasonable doubt that, in conspiring to violate the
25  Computer Fraud and Abuse Act, Title 18, United States Code, Section
26  1030(a)(2)(C), the offense was committed for purposes of commercial
27  advantage or private financial gain.  Defendant admits that the
28  conspiracy to violate the Computer Fraud and Abuse Act that he

5

1  entered was for purposes of commercial advantage and private

2  financial gain.

3                              PENALTIES

4      8.   Defendant understands that the statutory maximum sentence

5  that the Court can impose for a violation of Title 18, United States

6  Code, Section 371, is:  5 years' imprisonment; a one-year period of

7  supervised release; a fine of $250,000 or twice the gross gain or

8  gross loss resulting from the offense, whichever is greatest; and a

9  mandatory special assessment of $100.

10     9.   Defendant understands that supervised release is a period

11 of time following imprisonment during which defendant will be subject

12 to various restrictions and requirements.  Defendant understands that

13 if defendant violates one or more of the conditions of any supervised

14 release imposed, defendant may be returned to prison for all or part

15 of the term of supervised release authorized by statute for the

16 offense that resulted in the term of supervised release, which could

17 result in defendant serving a total term of imprisonment greater than

18 the statutory maximum stated above.

19     10.  Defendant understands that, by pleading guilty, defendant

20 may be giving up valuable government benefits and valuable civic

21 rights, such as the right to vote, the right to possess a firearm,

22 the right to hold office, and the right to serve on a jury.

23 Defendant understands that once the court accepts defendant's guilty

24 plea, it will be a federal felony for defendant to possess a firearm

25 or ammunition.  Defendant understands that the conviction in this

26 case may also subject defendant to various other collateral

27 consequences, including but not limited to revocation of probation,

28 parole, or supervised release in another case and suspension or

1   revocation of a professional license.  Defendant understands that
2   unanticipated collateral consequences will not serve as grounds to
3   withdraw defendant's guilty plea.

4       11.  Defendant understands that, if defendant is not a United
5   States citizen, the felony conviction in this case may subject
6   defendant to:  removal, also known as deportation, which may, under
7   some circumstances, be mandatory; denial of citizenship; and denial
8   of admission to the United States in the future.  The court cannot,
9   and defendant's attorney also may not be able to, advise defendant
10  fully regarding the immigration consequences of the felony conviction
11  in this case.  Defendant understands that unexpected immigration
12  consequences will not serve as grounds to withdraw defendant's guilty
13  plea.

14                            FACTUAL BASIS

15      12.  Defendant admits that defendant is, in fact, guilty of the
16  offense to which defendant is agreeing to plead guilty.  Defendant
17  and the USAO agree to the statement of facts provided below and agree
18  that this statement of facts is sufficient to support a plea of
19  guilty to the charge described in this agreement and to establish the
20  Sentencing Guidelines factors to which the parties have agreed set
21  forth in paragraph 14 below (noting that the parties do not agree as
22  to the application of certain Sentencing Guidelines factors, as
23  indicated in paragraphs 15 and 16) but is not meant to be a complete
24  recitation of all facts relevant to the underlying criminal conduct
25  or all facts known to either party that relate to that conduct.

26          a.   Defendant is a citizen of the People's Republic of
27  China ("China") and has maintained immigration status as a resident
28  of Canada.  Defendant owns and operates a business that deals in

                                  7

1    aviation and aerospace technology, a field in which defendant is

2    trained and knowledgeable.

3             b.    Unindicted Co-Conspirator 1 and Unindicted Co-

4    Conspirator 2 were each citizens of China and located in China, which

5    are facts defendant knew.

6             c.    Beginning in or about October 2008, and continuing to

7    May 2014, defendant, Unindicted Co-Conspirator 1, and Unindicted Co-

8    Conspirator 2 agreed to gain unauthorized access to the computers and

9    computer networks of companies in the United States and elsewhere,

10   and to obtain information from those computers, including sensitive

11   and valuable military data that required a license for export from

12   the United States, and to export that information out of the United

13   States.  Defendant joined the conspiracy knowing that these were its

14   objects.  The companies that owned, maintained, and used those

15   computers were located in the United States, and those companies

16   produced goods and technologies that were sold and shipped to

17   customers, and were intended to be sold and shipped, in interstate

18   and foreign commerce.  One such company was The Boeing Company

19   ("Boeing").  Specifically, Boeing maintained multiple computer

20   servers containing files relating to the C-17 military transport

21   aircraft (the "C-17"), including servers in Orange County,

22   California, containing detailed files necessary to make the component

23   parts of the C-17.  The computers that were accessed without

24   authorization in the course of the conspiracy were thus protected

25   computers that were used in and affected interstate and foreign

26   commerce and communication.  Over the course of the conspiracy,

27   defendant was in the United States, China, Canada, and other

28   countries.

d.   Defendant knew that neither he nor Unindicted Co-Conspirator 1 or Unindicted Co-Conspirator 2 were authorized to access the computers or the data on the computers to which they gained access in the course of the conspiracy.

e.   After Unindicted Co-Conspirator 1 gained access to information residing on computers of U.S. companies, he e-mailed defendant directory file listings and folders showing the data Unindicted Co-Conspirator 1 had been able to access.  Defendant then directed Unindicted Co-Conspirator 1 as to which files and folders Unindicted Co-Conspirator 1 should steal.  Defendant and Co-Conspirator 1 did this specifically with respect to data related to certain aircraft programs or technology.  Unindicted Co-Conspirator 1 then used the access he had gained to those victims' computers and stole the data that defendant had identified.  The conspiracy involved the use of sophisticated means and defendant caused the conduct constituting the sophisticated means, including Co-Conspirator 1's use of techniques to avoid detection when gaining and maintaining access to and stealing data from the victims' computers.

f.   Defendant, who operated a business that supplied aviation and aerospace equipment, translated the contents of certain data that defendant, Co-Conspirator 1, and Co-Conspirator 2 had stolen that was in English into Chinese.

g.   Defendant, Unindicted Co-Conspirator 1, and Unindicted Co-Conspirator 2 each wrote, revised, and e-mailed certain reports about the information and technology they had acquired by the hacking.  Those reports explained the value of the information and in some cases noted that the information was controlled for export from the United States.

1    h.    Defendant engaged in this conduct for the purpose of

2  commercial gain, and specifically sought to profit from selling the

3  data he and Unindicted Co-Conspirator 1 had acquired.

4    i.    Defendant and his co-conspirators knew and intended

5  that the data they accessed and stole included data that was

6  controlled for export from the United States.  The data defendant

7  sought included technical data that was controlled for export because

8  it was included on the USML and was subject to the ITAR, Title 22,

9  Code of Federal Regulations, Parts 120-130.

10    j.    Defendant knew that it was illegal to send in any way

11  military technical data that was controlled for export from the

12  United States, without a license or authorization from an agency of

13  the United States government.  Defendant knew it was illegal for

14  defendant himself, Unindicted Co-Conspirator 1, and Unindicted Co-

15  Conspirator 2 to gain access to and review the contents of files and

16  documents on computer systems in the United States that contained

17  export-controlled military data, and also that it was illegal to

18  transmit those files out of the United States to any country without

19  a license or authorization to do so.  Nonetheless that is what

20  defendant and his co-conspirators intended to do in furtherance of

21  the conspiracy.  Neither defendant nor anyone else ever obtained a

22  license for the export or disclosure of any military technical data

23  that was controlled for export form the United States.

24    k.    In furtherance of the conspiracy, defendant and other

25  members of the conspiracy committed at least one overt act, including

26  specifically the following:

27    (1)  On December 14, 2009, defendant sent an e-mail to

28  Unindicted Co-conspirator 1 with a subject line of "Target."

10

1   Attached to the e-mail was a file containing the names and positions
2   of U.S. executives as well as a website and telephone number.
3          (2)   On December 17, 2009, defendant sent an e-mail to
4   Unindicted Co-conspirator 1 and copied Unindicted Co-conspirator 2
5   with a subject line of "RE: Target."   In that e-mail defendant
6   identified e-mail addresses, a website, and four individuals
7   associated with a European company.
8          (3)   On January 21, 2010, Unindicted Co-conspirator 1
9   sent defendant a file titled "C-17_2.rar" and asked defendant to
10  write Unindicted Co-conspirator 1 a document about which files were
11  important, which ones were not important, and what they were.
12         (4)   On January 23, 2010, defendant sent an e-mail to
13  Unindicted Co-conspirator 1 with a subject line of "RE: C-17 _2,"
14  attached a document titled "Appendix 3.rar," and wrote that, judging
15  from its name, the document looked fine.
16         (5)   On January 23, 2010, Unindicted Co-conspirator 1
17  sent an e-mail to defendant with a subject line of "Re: C-17 _2," and
18  wrote that 3.txt was the list of documents.
19         (6)   On January 25, 2010, defendant sent an e-mail to
20  Unindicted Co-conspirator 1 with a subject line of "Re: C-17 _2" and
21  attached a document titled "Appendix-3.docx," which was a list of
22  files and folders related to the C-17, with some files and folders
23  highlighted in yellow.   In the e-mail defendant wrote that the useful
24  ones were marked in yellow.
25         (7)   On February 28, 2010, defendant sent Unindicted
26  Co-conspirator 1 an e-mail in which defendant wrote that the value
27  was decent for a document related to a specific military aircraft.
28

1           (8)  On March 19, 2010, Unindicted Co-conspirator 1

2 sent defendant an e-mail with a subject line of "View picture."

3 Unindicted Co-conspirator 1 attached to that e-mail an image of a

4 list of seven filenames and a description of their contents, six of

5 which files referred to "c-17" or "c17" in the name of the file.

6           (9)  On April 4, 2010, defendant sent Unindicted Co-

7 conspirator 1 an e-mail asking Unindicted Co-conspirator 1 to take a

8 look at a specific file.

9          (10) On April 4, 2010, Unindicted Co-conspirator 1

10 sent defendant an e-mail attached to which was an image showing a

11 computer monitor displaying a presentation related to training on a

12 U.S. military aircraft, which was marked proprietary and with an

13 export control warning.

14        (11) On November 10, 2011, defendant edited a report

15 that discussed how an identified non-U.S. entity had acquired

16 research and development information that related to a specific

17 military project that was subject to export restrictions, explained

18 why that information was valuable, and sought support to complete its

19 work in acquiring more information.

20        (12) On November 10, 2011, defendant sent an e-mail to

21 Unindicted Co-conspirator 1 and Unindicted Co-conspirator 2.

22 Attached to that e-mail was the report described in paragraph (11).

23        (13) On March 23, 2012, defendant modified a document

24 related to a flight test plan for a U.S. military aircraft with

25 different portions written in English and in Chinese that bore

26 notations that it was proprietary information and subject to export

27 restrictions.

28

1     (14) On May 3, 2012, defendant sent an e-mail to

2   Unindicted Co-conspirator 1, attached to which was the document

3   described in paragraph (13).

4                         SENTENCING FACTORS

5     13.   Defendant understands that in determining defendant's

6   sentence the Court is required to calculate the applicable Sentencing

7   Guidelines range and to consider that range, possible departures

8   under the Sentencing Guidelines, and the other sentencing factors set

9   forth in 18 U.S.C. § 3553(a).  Defendant understands that the

10  Sentencing Guidelines are advisory only, that defendant cannot have

11  any expectation of receiving a sentence within the calculated

12  Sentencing Guidelines range, and that after considering the

13  Sentencing Guidelines and the other § 3553(a) factors, the Court will

14  be free to exercise its discretion to impose any sentence it finds

15  appropriate up to the maximum set by statute for the crime of

16  conviction.

17    14.   Defendant and the USAO agree to the following applicable

18  Sentencing Guidelines factors:

19        a.   Because defendant is charged with violating Title 18,

20  United States Code, Section 371, U.S.S.G. § 2X1.1 applies.  Pursuant

21  to U.S.S.G. § 2X1.1(a), the applicable offense level is the base

22  offense level for the substantive offense that is the object of the

23  conspiracy plus applicable adjustments.  The parties agree that the

24  three level decrease pursuant to U.S.S.G. § 2X1.1(b)(2) does not

25  apply.  Because defendant is charged with a conspiracy with two

26  objects, each a different substantive offense, pursuant to U.S.S.G.

27  § 3D1.2, comment 8, the Guidelines factors to which the parties have

28  agreed for each substantive offense are set forth below.

                              13

b.   To the first object of the conspiracy, namely to violate the Computer Fraud and Abuse Act, Title 18, United States Code, Section 1030(a)(2)(C) and (c)(2)(B)(i), the following Guidelines apply:

Base Offense Level:                    6      [U.S.S.G. § 2B1.1(a)(2)]

Use of Sophisticated Means                         [U.S.S.G.

                                     +2            § 2B1.1(b)(10)(C)]

c.   To the second object of the conspiracy, namely to violate the AECA, Title 22, United States Code, Section 2778(c), and the ITAR, the following Guidelines apply:

Base Offense Level:                   26      [U.S.S.G. § 2M5.2(a)(1)]

15.   Defendant and the USAO, however, do not agree as to whether certain Guidelines enhancements and adjustments apply to the offense conduct.   For purposes of the object of the conspiracy that was to violate the Computer Fraud and Abuse Act, Title 18, United States Code, Section 1030(a)(2)(C) and (c)(2)(B)(i), defendant and the USAO agree that either party may argue that any of the following enhancements do or do not apply, and that while the government intends to recommend that the following enhancements apply and will submit evidence to support the facts necessary for their application, defendant contests their application and contends that they do not apply:

a.   The application of up to sixteen-levels of an enhancement based on the loss amount involved in the offense measured under the Guidelines, pursuant to U.S.S.G. § 2B1.1(b)(1)(I), which enhancement applies if the loss amount is more than $1,500,000.   The government agrees not to argue that the loss amount exceeds $2,000,000; and

14

1           b.    The application of a four-level enhancement based on

2    the misappropriation of a trade secret that defendant knew or

3    intended would benefit a foreign government, foreign instrumentality,

4    or foreign agent, pursuant to U.S.S.G. § 2B1.1(b)(13)(B), or in the

5    alternative, the application of a two-level enhancement based on the

6    misappropriation of a trade secret that defendant knew or intended

7    would be transported or transmitted out of the United States,

8    pursuant to U.S.S.G. § 2B1.1(b)(13)(A).

9         16.   Defendant and the USAO also do not agree as to whether

10   defendant is entitled to any decrease in his offense level based on

11   an adjustment for mitigating role in the offense pursuant to U.S.S.G.

12   § 3B1.2.

13        17.   The parties agree that the separate objects of the

14   conspiracy group with each other for purposes of calculating the

15   advisory Guidelines range pursuant to U.S.S.G. § 3D1.2(a),

16   § 3D1.2(b), and § 3D1.2 comment 8.   Therefore the parties agree that

17   the offense level applicable to the single group will be the offense

18   level applicable to whichever of the two objects of the conspiracy

19   that is higher, pursuant to U.S.S.G. § 3D1.3(a).   The maximum offense

20   level that would result from this agreement, should the government

21   recommend the reduction of three levels provided in paragraph 3.e, is

22   25.

23        18.   Aside from the specific Guidelines provisions discussed

24   above and herein, defendant and the USAO agree not to seek, argue, or

25   suggest in any way, either orally or in writing, that any other

26   specific offense characteristics, adjustments, or departures relating

27   to the offense level be imposed.   Defendant agrees, however, that if,

28   after signing this agreement but prior to sentencing, defendant were

1    to commit an act, or the USAO were to discover a previously

2    undiscovered act committed by defendant prior to signing this

3    agreement, which act, in the judgment of the USAO, constituted

4    obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the

5    USAO would be free to seek the enhancement set forth in that section.

6         19.   Defendant understands that there is no agreement as to

7    defendant's criminal history or criminal history category.

8         20.   Defendant understands that there is no agreement as to the

9    application or amount of any restitution to any victim.

10        21.   Except as provided in paragraph 3.f, defendant and the USAO

11   reserve the right to argue for a sentence outside the sentencing

12   range established by the Sentencing Guidelines based on the factors

13   set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and

14   (a)(7).

15                    <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16        22.   Defendant understands that by pleading guilty, defendant

17   gives up the following rights:

18             a.   The right to persist in a plea of not guilty.

19             b.   The right to a speedy and public trial by jury.

20             c.   The right to be represented by counsel -- and if

21   necessary have the court appoint counsel -- at trial.  Defendant

22   understands, however, that, defendant retains the right to be

23   represented by counsel -- and if necessary have the court appoint

24   counsel -- at every other stage of the proceeding.

25             d.   The right to be presumed innocent and to have the

26   burden of proof placed on the government to prove defendant guilty

27   beyond a reasonable doubt.

28

1        e.    The right to confront and cross-examine witnesses

2 against defendant.

3        f.    The right to testify and to present evidence in

4 opposition to the charges, including the right to compel the

5 attendance of witnesses to testify.

6        g.    The right not to be compelled to testify, and, if

7 defendant chose not to testify or present evidence, to have that

8 choice not be used against defendant.

9        h.    Any and all rights to pursue any affirmative defenses,

10 Fourth Amendment or Fifth Amendment claims, and other pretrial

11 motions that have been filed or could be filed.

12 <u>WAIVER OF RETURN OF DIGITAL DATA AND DOCUMENTS</u>

13     23.   Understanding that pursuant to the request for assistance

14 ("the Request") submitted on June 30, 2014, pursuant to the Mutual

15 Legal Assistance Treaty between the U.S. and Canada ("the Treaty"),

16 legal authorities in Canada have seized on behalf of the USAO and the

17 Federal Bureau of Investigation ("FBI") digital devices and/or

18 digital media and/or documents from defendant and his residence, and

19 that such digital devices, digital media, and/or documents may

20 contain proprietary information or information or data subject to the

21 ITAR or to other U.S. export-control regulations that prohibit their

22 export outside of the United States ("export-controlled

23 information"), defendant will consent before Canadian Courts to the

24 issuance of an unconditional Sending Order for the transmittal to the

25 United States of all of the evidence seized pursuant to the Request.

26 The USAO and the FBI agree to return to defendant the original

27 documents as well as the original devices or original media

28 themselves and any personal or business files thereon not

1  constituting export-controlled information or proprietary information

2  after conducting a review of copies of the entire contents of those

3  devices, media, and documents in a manner that allows for the USAO

4  and FBI to determine whether they contain proprietary or export-

5  controlled information, understanding that the USAO and the FBI will

6  retain and use copies of the contents of the devices, media, and the

7  documents in accordance with the Treaty.

8  WAIVER OF APPEAL OF CONVICTION

9      24.  Defendant understands that, with the exception of an appeal

10 based on a claim that defendant's guilty plea was involuntary, by

11 pleading guilty defendant is waiving and giving up any right to

12 appeal defendant's conviction on the offense to which defendant is

13 pleading guilty.

14 LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

15 AND WAIVER OF COLLATERAL ATTACK

16     25.  Defendant agrees that, provided the Court imposes a total

17 term of imprisonment on all counts of conviction of no more than 57

18 months' imprisonment, defendant gives up the right to appeal all of

19 the following:  (a) the procedures and calculations used to determine

20 and impose any portion of the sentence; (b) the term of imprisonment

21 imposed by the Court; (c) the fine imposed by the court, provided it

22 is within the statutory maximum; (d) the term of probation or

23 supervised release imposed by the Court, provided it is within the

24 statutory maximum; and (e) any of the following conditions of

25 probation or supervised release imposed by the Court:  the conditions

26 set forth in General Orders 318, 01-05, and/or 05-02 of this Court;

27 the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and

28

18

1   3583(d); and the alcohol and drug use conditions authorized by 18

2   U.S.C. § 3563(b)(7).

3       26.   Defendant also gives up any right to bring a post-

4   conviction collateral attack on the conviction or sentence, including

5   any order of restitution, except a post-conviction collateral attack

6   based on a claim of ineffective assistance of counsel, a claim of

7   newly discovered evidence, or an explicitly retroactive change in the

8   applicable Sentencing Guidelines, sentencing statutes, or statutes of

9   conviction.

10      27.   The USAO agrees that, provided (a) all portions of the

11  sentence are at or below the statutory maximum specified above and

12  (b) the Court imposes a term of imprisonment of no less than 37

13  months, the USAO gives up its right to appeal any portion of the

14  sentence.

15                  RESULT OF WITHDRAWAL OF GUILTY PLEA

16      28.   Defendant agrees that if, after entering a guilty plea

17  pursuant to this agreement, defendant seeks to withdraw and succeeds

18  in withdrawing defendant's guilty plea on any basis other than a

19  claim and finding that entry into this plea agreement was

20  involuntary, then (a) the USAO will be relieved of all of its

21  obligations under this agreement; and (b) should the USAO choose to

22  pursue any charge that was either dismissed or not filed as a result

23  of this agreement, then (i) any applicable statute of limitations

24  will be tolled between the date of defendant's signing of this

25  agreement and the filing commencing any such action; and

26  (ii) defendant waives and gives up all defenses based on the statute

27  of limitations, any claim of pre-indictment delay, or any speedy

28  trial claim with respect to any such action, except to the extent

                                    19

1  that such defenses existed as of the date of defendant's signing this

2  agreement.

3                    RESULT OF VACATUR, REVERSAL OR SET-ASIDE

4       29.  Defendant agrees that if the count of conviction is

5  vacated, reversed, or set aside, both the USAO and defendant will be

6  released from all their obligations under this agreement.

7                       EFFECTIVE DATE OF AGREEMENT

8       30.  This agreement is effective upon signature and execution of

9  all required certifications by defendant, defendant's counsel, and an

10 Assistant United States Attorney.

11                         BREACH OF AGREEMENT

12      31.  Defendant agrees that if defendant, at any time after the

13 signature of this agreement and execution of all required

14 certifications by defendant, defendant's counsel, and an Assistant

15 United States Attorney, knowingly violates or fails to perform any of

16 defendant's obligations under this agreement ("a breach"), the USAO

17 may declare this agreement breached.  All of defendant's obligations

18 are material, a single breach of this agreement is sufficient for the

19 USAO to declare a breach, and defendant shall not be deemed to have

20 cured a breach without the express agreement of the USAO in writing.

21 If the USAO declares this agreement breached, and the Court finds

22 such a breach to have occurred, then:  (a) if defendant has

23 previously entered a guilty plea pursuant to this agreement,

24 defendant will not be able to withdraw the guilty plea, and (b) the

25 USAO will be relieved of all its obligations under this agreement.

26      32.  Following the Court's finding of a knowing breach of this

27 agreement by defendant, should the USAO choose to pursue any charge

28

that was either dismissed or not filed as a result of this agreement, then:

      a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

      b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

      c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

### COURT AND PROBATION OFFICE NOT PARTIES

33. Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

34. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

1  to the United States Probation Office and the Court, (b) correct any
2  and all factual misstatements relating to the Court's Sentencing
3  Guidelines calculations and determination of sentence, and (c) argue
4  on appeal and collateral review that the Court's Sentencing
5  Guidelines calculations and the sentence it chooses to impose are not
6  error, although each party agrees to maintain its view that the
7  calculations in paragraph 14 are consistent with the facts of this
8  case.  While this paragraph permits both the USAO and defendant to
9  submit full and complete factual information to the United States
10 Probation Office and the Court, even if that factual information may
11 be viewed as inconsistent with the facts agreed to in this agreement,
12 this paragraph does not affect defendant's and the USAO's obligations
13 not to contest the facts agreed to in this agreement.

14     35.  Defendant understands that even if the Court ignores any
15 sentencing recommendation, finds facts or reaches conclusions
16 different from those agreed to, and/or imposes any sentence up to the
17 maximum established by statute, defendant cannot, for that reason,
18 withdraw defendant's guilty plea, and defendant will remain bound to
19 fulfill all defendant's obligations under this agreement.  Defendant
20 understands that no one -- not the prosecutor, defendant's attorney,
21 or the Court -- can make a binding prediction or promise regarding
22 the sentence defendant will receive, except that it will be within
23 the statutory maximum.

24                      NO ADDITIONAL AGREEMENTS

25     36.  Defendant understands that, except as set forth herein,
26 there are no promises, understandings, or agreements between the USAO
27 and defendant or defendant's attorney, and that no additional

28

                                  22

1  promise, understanding, or agreement may be entered into unless in a

2  writing signed by all parties or on the record in court.

3  <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

4      37.  The parties agree that this agreement will be considered

5  part of the record of defendant's guilty plea hearing as if the

6  entire agreement had been read into the record of the proceeding.

7  AGREED AND ACCEPTED

8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF

9  CALIFORNIA

10 EILEEN M. DECKER
   United States Attorney

11

12 _____          <u>March 10, 2016</u>

13 ANTHONY J. LEWIS                          Date
   Assistant United States Attorney

14 _____          <u>2/17/16</u>

15 SU BIN                                    Date
   Defendant

16 _____          <u>2/17/16</u>

17 ROBERT J. ANELLO                          Date
   Attorney for Defendant Su Bin

18

19

20 <u>CERTIFICATION OF DEFENDANT</u>

21     I have read this agreement in its entirety.  This agreement has

22 been read to me in Chinese, the language I understand best.  I have

23 had enough time to review and consider this agreement, and I have

24 carefully and thoroughly discussed every part of it with my attorney.

25 I understand the terms of this agreement, and I voluntarily agree to

26 those terms.  I have discussed the evidence with my attorney, and my

27 attorney has advised me of my rights, of possible pretrial motions

28 that might be filed, of possible defenses that might be asserted

                                     23

1    either prior to or at trial, of the sentencing factors set forth in

2    18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions,

3    and of the consequences of entering into this agreement.   No

4    promises, inducements, or representations of any kind have been made

5    to me other than those contained in this agreement.   No one has

6    threatened or forced me in any way to enter into this agreement.   I

7    am satisfied with the representation of my attorney in this matter,

8    and I am pleading guilty because I am guilty of the charges and wish

9    to take advantage of the promises set forth in this agreement, and

10   not for any other reason.

11

12   _____          _____2/17/16_____
     SU BIN                            Date
     Defendant

13

14

15                    CERTIFICATION OF INTERPRETER

16        I _____ am fluent in the written and

17   spoken English and Chinese languages.   I accurately translated this

18   entire agreement from English into Chinese to defendant Su Bin on

19   this date. *Not needed. (BAT)*

20

21   _____          _____2/17/16_____
     INTERPRETER SIGNATURE             Date

22

23                 CERTIFICATION OF DEFENDANT'S ATTORNEY

24        I am Su Bin's attorney.   I have carefully and thoroughly

25   discussed every part of this agreement with my client.   Further, I

26   have fully advised my client of his rights, of possible pretrial

27   motions that might be filed, of possible defenses that might be

28   asserted either prior to or at trial, of the sentencing factors set

                                    24

1  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

2  provisions, and of the consequences of entering into this agreement.

3  To my knowledge: no promises, inducements, or representations of any

4  kind have been made to my client other than those contained in this

5  agreement; no one has threatened or forced my client in any way to

6  enter into this agreement; my client's decision to enter into this

7  agreement is an informed and voluntary one; and the factual basis set

8  forth in this agreement is sufficient to support my client's entry of

9  a guilty plea pursuant to this agreement.

10  _____  2/17/16

11  ROBERT J. ANELLO      Date
   Attorney for Defendant Su Bin

# Exhibit A

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

| UNITED STATES OF AMERICA, | SA CR No. 14-131(C) |
|---|---|

11

Plaintiff,

F I R S T
S U P E R S E D I N G
I N F O R M A T I O N

12

v.

13

SU BIN,
  aka "Stephen Su,"
  aka "Stephen Subin,"
  aka "Steven Subin,"

[18 U.S.C. § 371: Conspiracy; 18
U.S.C. §§ 1030(a)(2)(C),
(c)(2)(B)(i): Unauthorized
Computer Access; 22 U.S.C.
§§ 2778(b)(2), (c), 22 C.F.R.
§§ 121.1, 123.1, 127.1(a)(1),
127.1(a)(3), 127.1(a)(4),
127.1(d), 127.1(e): Arms Export
Control Act]

14

15

Defendant.

16

17

18

19

The United States Attorney charges:

20

COUNT ONE

21

[18 U.S.C. § 371]

22

INTRODUCTORY ALLEGATIONS

23

At all times relevant to this Information:

24

1.     Defendant SU BIN, also known as ("aka") "Stephen Su," aka

25

"Stephen Subin," aka "Steven Subin" ("defendant SU"), was a citizen

26

of the People's Republic of China (hereinafter "China").

27

2.     Unindicted Co-conspirator 1 was a citizen of China and

28

resided in China.

3.    Unindicted Co-conspirator 2 was a citizen of China and resided in China.

4.    Defendant SU, Unindicted Co-conspirator 1, and Unindicted Co-conspirator 2 e-mailed each other both in Chinese and English.

5.    The Boeing Company (hereinafter "Boeing"), headquartered in Chicago, Illinois, was a company with offices throughout the United States that developed and sold military and commercial aircraft, among other goods; technologies; and related support services. Boeing had facilities in many locations, including Seal Beach and Long Beach, California.  The goods and technologies Boeing sold to its customers were sold and shipped, and were intended to be sold and shipped, in interstate and foreign commerce.

6.    One of the aircraft models that Boeing manufactured was the C-17 military transport aircraft ("the C-17"), including variants of the C-17, which was manufactured in Los Angeles County, California, located in the Central District of California.  The C-17 was developed over multiple years and produced by Boeing and its predecessor and subcontractors pursuant to contracts with the United States Air Force at a cost of billions of dollars.  Developing and producing the C-17 required the use of export-controlled technical data.  Boeing maintained multiple computer servers containing files relating to the C-17, including servers in Orange County, California, containing detailed files necessary to make the component parts of the C-17.

7.    The F-35 "Lightning" was a fifth-generation fighter jet aircraft capable of supersonic speed and equipped with "stealth" capabilities that allowed it to evade radar ("the F-35").

1    8.   The F-22 "Raptor" was a fifth-generation fighter jet

2  aircraft capable of supersonic speed and equipped with "stealth"

3  capabilities that allowed it to evade radar ("the F-22").

4    9.   The Arms Export Control Act, Title 22, United States Code,

5  Section 2778 ("AECA"), authorized the President of the United States

6  to control the export of "defense articles" and "technical data"

7  related to such defense articles by designating those items and that

8  data as defense articles and by promulgating regulations for the

9  import and export of such articles and data.

10    10.   Defense articles and technical data subject to such

11  licensing requirements were designated on the United States Munitions

12  List ("USML").   Those designations were made by the United States

13  Department of State ("Department of State") with the concurrence of

14  the United States Department of Defense ("Department of Defense").

15  (22 U.S.C. § 2778(a)(1); 22 C.F.R. § 120.2.)

16    11.   Category VIII of the USML, among others, included aircraft

17  and aircraft-related equipment.   (22 C.F.R. § 121.1.)

18    12.   The AECA and its attendant regulations, the International

19  Traffic in Arms Regulations, Title 22, Code of Federal Regulations,

20  Parts 120-130 ("ITAR"), which contains the USML, required a person to

21  apply for and obtain an export license from the Directorate of

22  Defense Trade Controls ("DDTC") of the Department of State before

23  exporting from the United States defense articles or related

24  technical data by any means, including by disclosing technical data

25  on the USML to a foreign person.   (22 U.S.C. § 2778(b)(2); 22 C.F.R.

26  §§ 120.1, 120.10, 120.17.)

27

28

1      13.  At no time did defendant SU apply for, receive, or possess

2 a license to export defense articles or related technical data from

3 the United States.

4 A.   OBJECT OF THE CONSPIRACY

5      14.  Beginning in or about October 2008, and continuing up to

6 and including at least in or about May 2014, in Orange County, within

7 the Central District of California, and elsewhere, including outside

8 the United States, defendant SU BIN, also known as ("aka") "Stephen

9 Su," aka "Stephen Subin," aka "Steven Subin" ("defendant SU"),

10 Unindicted Co-conspirator 1, Unindicted Co-conspirator 2, and others

11 known and unknown to the Grand Jury, knowingly combined, conspired,

12 and agreed with each other knowingly and intentionally to commit an

13 offense against the United States, namely:

14        a.   To intentionally access a protected computer without

15 authorization, and exceed authorized access, and thereby obtain

16 information from a protected computer, as that term is defined at

17 Title 18, United States Code, Section 1030(e)(2), where the offense

18 was committed for purposes of commercial advantage and private

19 financial gain; and

20       b.   To willfully export and cause to be exported from the

21 United States items designated as defense articles on the USML,

22 namely technical data, including by means of disclosing such

23 technical data to foreign nationals, without having first obtained

24 from the DDTC the required export license or authorization for such

25 export, in violation of Title 22, United States Code, Sections

26 2778(b) and (c), and Title 22, Code of Federal Regulations, Sections

27 121.1, 123.1, 127.1(a)(1), 127.1(a)(3), 127.1(a)(4), 127.1(d), and

28 127.1(e).

A.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
ACCOMPLISHED

15.   The objects of the conspiracy were to be accomplished in
substance as follows:

16.   Defendant SU would e-mail Unindicted Co-Conspirators 1 and
2 the persons, companies, and technologies to target in order to
obtain export-controlled technical data and other information through
unlawful computer intrusions.

17.   Unindicted Co-Conspirator 1 would e-mail defendant SU
information and files showing defendant SU the export-controlled
technical data and other information and files to which Unindicted
Co-conspirator 1 had gained access through unlawful computer
intrusions.   Defendant SU would then advise Unindicted Co-conspirator
1 as to which information and files Unindicted Co-conspirator 1
should steal.   After gaining unauthorized access into various
protected computers, Unindicted Co-conspirator 1 would then steal,
copy, download, transmit, possess, and send the information and files
that defendant SU had identified, without having obtained permission
or authorization to export technical data out of the United States or
to disclose it to foreign persons.

18.   Defendant SU, Unindicted Co-conspirator 1, and Unindicted
Co-conspirator 2 would then write, revise, and circulate reports that
described the export-controlled technical data and other information
they and others had obtained by engaging in such computer hacking,
the value of that information, the significance of the information in
developing similar technologies, their progress, and their need to
continue their computer intrusions.   The reports would also explain
that the information was protected by U.S. export restrictions.

5

1       19.   Defendant SU and Unindicted Co-conspirator 1 would

2 communicate about selling some of the information that they had

3 obtained as a result of their unlawful computer intrusions.

4 B.   OVERT ACTS

5       20.   On or about the relevant dates listed herein, in

6 furtherance of the conspiracy and to accomplish the object of the

7 conspiracy, defendant SU, Unindicted Co-conspirator 1, Unindicted Co-

8 conspirator 2, and others known and unknown to the Grand Jury,

9 committed various overt acts within the Central District of

10 California and elsewhere.  Those overt acts included committing

11 computer intrusions, sending e-mails, drafting and revising reports

12 and other documents, and other overt acts, and include, but are not

13 limited to, the following:

14     Overt Act #1:  On December 14, 2009, defendant SU sent an e-mail

15 to Unindicted Co-conspirator 1 with a subject line of "Target."

16     Overt Act #2:  On December 17, 2009, defendant SU sent an e-mail

17 to Unindicted Co-conspirator 1 and copied Unindicted Co-conspirator 2

18 with a subject line of "RE: Target."

19     Overt Act #3:  On January 21, 2010, Unindicted Co-conspirator 1

20 sent defendant an e-mail attaching a file titled "C-17_2.rar."

21     Overt Act #4:  On January 23, 2010, defendant sent an e-mail to

22 Unindicted Co-conspirator 1 with a subject line of "RE: C-17_2."

23     Overt Act #5:  On January 23, 2010, Unindicted Co-conspirator 1

24 sent an e-mail to defendant with a subject line of "Re: C-17 _2."

25     Overt Act #6:  On January 25, 2010, defendant sent an e-mail to

26 Unindicted Co-conspirator 1 with a subject line of "Re: C-17 _2" and

27 attached a document titled "Appendix-3.docx."

28

1    Overt Act #7:  On February 28, 2010, defendant sent Unindicted

2  Co-conspirator 1 an e-mail discussing a specific military aircraft.

3    Overt Act #8:  On March 19, 2010, Unindicted Co-conspirator 1

4  sent defendant an e-mail with a subject line of "View picture."

5    Overt Act #9:  On April 4, 2010, defendant sent Unindicted Co-

6  conspirator 1 an e-mail asking Unindicted Co-conspirator 1 to take a

7  look at a specific file.

8    Overt Act #10:  On April 4, 2010, Unindicted Co-conspirator 1

9  sent defendant an e-mail attaching an image of a computer monitor.

10    Overt Act #11:  On November 10, 2011, defendant edited a report

11  related to a specific military project.

12    Overt Act #12:  On November 10, 2011, defendant sent an e-mail

13  to Unindicted Co-conspirator 1 and Unindicted Co-conspirator 2

14  attaching the report described in Overt Act #9.

15    Overt Act #13:  On March 23, 2012, defendant modified a document

16  related to a flight test plan for a military aircraft.

17  //

18  //

19

20

21

22

23

24

25

26

27

28

1     <u>Overt Act #14</u>:  On May 3, 2012, defendant sent an e-mail to

2 Unindicted Co-conspirator 1 attaching the document described in Overt

3 Act #11.

4

5                                   EILEEN M. DECKER

6                                   United States Attorney

7

8                                   PATRICIA A. DONAHUE

9                                   Assistant United States Attorney
                                   Chief, National Security Division

10                               CHRISTOPHER D. GRIGG

11                             Assistant United States Attorney
                             Chief, Terrorism and Export

12                                Crimes Section

13                             ANTHONY J. LEWIS
                             Assistant United States Attorney

14                             Deputy Chief, Terrorism and Export
                             Crimes Section

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1              CERTIFICATE OF SERVICE

2         I, **CAREY P. CRONIN**, declare:

3         That I am a citizen of the United States and a resident of or

4    employed in Los Angeles County, California; that my business address

5    is the Office of United States Attorney, 312 North Spring Street,

6    Los Angeles, California 90012; that I am over the age of 18; and

7    that I am not a party to the above-titled action;

8         That I am employed by the United States Attorney for the

9    Central District of California, who is a member of the Bar of the

10   United States District Court for the Central District of California,

11   at whose direction I served a copy of:
     **PLEA AGREEMENT FOR DEFENDANT SU BIN**

12

13

14   ☐ Placed in a closed envelope        ☒ Placed in a sealed envelope
        for collection and inter-            for collection and mailing via
        office delivery, addressed as        United States mail, addressed
15      follows:                             as follows: **SEE ATTACHMENT**

16   ☐ By hand delivery, addressed as    ☐ By facsimile, as follows:
        follows:

17

18   ☐ By email, as follows:            ☐ By Federal Express, as
                                            follows:
19

20        This Certificate is executed on **March 22, 2016** at Los Angeles,

21   California.  I certify under penalty of perjury that the foregoing

22   is true and correct.

23

24                                        _____
                                          CAREY P. CRONIN
25                                        Legal Assistant

26

27

28

## ATTACHMENT U.S. v. SU BIN SA CR 14-131

**Brian James Hennigan**
Hueston Hennigan LLP
523 West Sixth Street Suite 400
Los Angeles, CA 90014
213-788-4340

**Brian A Jacobs**
Morvillo Abramowitz Grand Iason and Anello PC
565 Fifth Avenue
New York, NY 10017
212-880-9536

**Devin M Cain**
Morvillo Abramowitz Grand Iason and Anello PC
565 Fifth Avenue
New York, NY 10017
212-880-9425

**Marshall A Camp**
Hueston Hennigan LLP
523 West 6th Street Suite 400
Los Angeles, CA 90014
213-788-4351

**Robert J Anello**
Morvillo Abramowitz Grand Iason and Anello PC
565 Fifth Avenue
New York, NY 10017
212-880-9520